Filing # 120202756 E-Filed 01/25/2021 05:16:34 PM

IN THE 8th JUDICIAL CIRCUIT COURT
IN AND FOR UNION COUNTY, FLORIDA

ROGER DAVID ALCOTT                CASE NO. ~~63-2020-CACE-000031~~
                                  63-2021-CA-0003
      Petitioner,

v.

CENTURION OF FLORIDA, LLC;
CORIZON, LLC;
CORIZON HEALTH, INC.;
DR. BENJAMIN R. HASTY
ADVANCED EYE CARE OF BAY
COUNTY, P.A.

      Defendants.

_____

**COMPLAINT FOR DAMAGES**

    Plaintiff, Roger Alcott (hereafter "ALCOTT") through undersigned counsel files this Complaint for Damages against Defendants, Corizon, LLC; Corizon Health, Inc.; Centurion of Florida, LLC; Dr. Benjamin R. Hasty & Advanced Eye Care of Bay County, P.A. & states as follows:

**JURISDICTION & VENUE**

1. Plaintiff seeks damages in an amount greater than $30,000.

2. The two subject causes of action occurred at the Reception & Medical Center (Lake Butler) in Union County, Florida. The subject causes of action are 1) the left eye cataract surgery performed by Dr. Hasty on April 18, 2018 leading to blindness in Roger's left eye and 2) the right eye cataract surgery performed by Dr. Hasty on May 16, 2018 leading to blindness in Roger's right eye. ALCOTT was in multiple correctional facilities both before & after these

two surgeries in other counties. However, the two separate cataract surgeries are the catalysts leading to detached retinas in both eyes & the subsequent loss of vision in each eye.

3. This is an action arising under 42 U.S.C. §§ 1983, 1988, and the Eighth Amendment of the United States Constitution, and this Court has concurrent jurisdiction with the United States District Court over such claims.

4. The Plaintiff has complied with all pre-suit requirements of Florida Statute 766.

## PARTIES

5. Roger Alcott was incarcerated in the Florida Department of Correction system from April 1, 2014 to November 27, 2019. The Patient had no health problems with respect to his vision when he entered the Florida Department of Correction system apart from a diagnosis of amblyopia at birth.

6. At all times relevant herein, Corizon, Inc. and Corizon Health, Inc. were Tennessee Corporations authorized to do business in the State of Florida.

7. Corizon Health, Inc. is the manager and sole member of Corizon, LLC. For the purposes of this Complaint, Plaintiff will use the term "CORIZON" to mean each of the Corizon entities.

8. Prior to May 1, 2016, CORIZON had a contract with the Florida Department of Corrections to provide medical services on behalf of inmates in the Florida Department of Corrections system.

9. At all times relevant after May 1, 2016, Centurion of Florida, Inc. was a Missouri Corporation authorized to do business in the State of Florida.

10. Beginning on May 1, 2016, CENTURION entered into a contract with the Florida Department of Correction to provide medical services on behalf of inmates in the Florida

2

Department of Correction system. The contract was in effect through the end of the Patient's sentence in November 2019.

11. At all times relevant herein, Advance Eye Care of Bay County, P,A, was a Florida Corporation authorized to do business in the State of Florida.

12. At all times relevant herein, Dr. Benjamin R. Hasty was a licensed ophthalmologist in the State of Florida doing business as Advance Eye Care of Bay County, P,A,.

13. Dr. Benjamin R. Hasty is the registered agent for Advance Eye Care of Bay County, P,A,.

14. For the purposes of this Complaint, Plaintiff will use the term "DR. HASTY" to collectively mean Dr Hasty & Advanced Eye Care of Bay County, P.A..

15. DR. HASTY was an independent contractor who performed surgery & other ophthalmic services for CENTURION at all times relevant herein.

**SPECIFIC ALLEGATIONS**

16. On March 31, 2015, the Patient (ALCOTT) was diagnosed with cataracts in each eye when he went to a routine eye examination with an optician. There is no medical record for this visit. We are only aware of this visit because of a Chrono Note & a reference to this visit at a subsequent appointment on May 16, 2017 visit with Dr. Kelli Parks where cataract surgery was recommended "as soon as possible".

17. Once a patient is diagnosed with cataracts, there is no cure other than surgery. Glasses may be an acceptable course of treatment initially. However, it is well-known that cataracts develop faster in younger patients (less than 60-years old) & those patients that may have certain medical condition such as HIV. A 38- year like ALCOTT with an HIV diagnosis should have had follow up visits at least every six months after the initial diagnosis. The records properly note that three of ALCOTT's HIV medications list blurry vision as a side

3

effect. These conditions should have necessitated more frequent follow-up appointments, not cancellations of already scheduled appointments.

18. ALCOTT was not seen by any other ophthalmologist prior to when CORIZON's contract with the Florida Department of Corrections system ended even though a December 28, 2015 Chrono Note stated that the Patient required an ophthalmology consult. The appointment was scheduled for April 20, 2016 but was cancelled for no reason (see Chrono Note of March 8, 2016).

19. On May 16, 2017, ALCOTT was seen by Dr. Kelli Parks who noted that the patient had severe cataracts that had gotten progressively worse since 2015 & that it was causing increasing IOP (intra-ocular pressure). Dr Park's notes also stated, "recommend cataract surgery as soon as possible".

20. There was a 26-month gap between when ALCOTT was diagnosed with cataracts & when he was scheduled for a follow-up examination. ALCOTT should have been examined within six-months of his cataract diagnosis as it is much more likely for cataracts to develop negatively in younger patients. At the very least, ALCOTT should have seen a specialist within 12-months of his March 31, 2015 cataract diagnosis.

21. ALCOTT was then transferred to another facility on May 23, 2017 where the notes stated, "severe cataracts" & included a "Blue Form". The "Blue Form" was signed by the Patient & represented the approval for his cataract surgery.

22. On July 1, 2017, ALCOTT was seen at "Sick Call" where he inquired about his upcoming surgery & mentioned the "Blue Form" that he signed.

23. On July 9. 2017, ALCOTT made a Sick Call Request where he asked if the "Blue Form" was lost & he stated that his condition was getting progressively worse. ALCOTT was not seen

4

by any medical provider until the January 12, 2018 ophthalmology consult with DR. HASTY (six months later).

24. The only records in the ALCOTT's file over the next six months after July 9, 2017 are three pages of notes about a) his upcoming surgery b) that there was no upcoming "opt" consult & c) that there is an upcoming "opt" consult.

25. The complete lack of care by CENTURION staff led to an advanced progression of his cataracts which made the subsequent cataract surgery in each eye that much more difficult. There is further negligence by CENTURION due to losing his "Blue Form" which was his surgery clearance form.

26. DR. HASTY had his first consult with the Patient on January 12, 2018. DR. HASTY recommended cataract surgery & noted the high risk of retinal detachment after surgery. DR. HASTY's plan was for left eye complex cataract surgery soon followed by the right eye cataract surgery 1-2 months later.

27. On April 18, 2018, DR. HASTY performed the left eye cataract surgery. A follow-up visit the next day revealed no complications with the surgery at that time.

28. On May 16, 2018, DR. HASTY performed the right eye cataract surgery. A follow up visit the next day stated that there were no complications from the right eye surgery. The Patient disputes these notes. The Patient stated that he mentioned to DR. HASTY issues that he was starting to have regarding the sight in his left eye, but the records do not reflect this. Nursing records from May 24, 2018 indicate that on May 18, 2018, the Patient noted blacklines & decreased left eye vision while on May 19, 2018, the Patient noted that "he could not see out of the left eye at all". This was one & two days after ALCOTT's post-operative visit with DR. HASTY after his right eye cataract surgery.

5

29. On May 21, 2018, ALCOTT filled out a Sick Call request that stated, "my eyes are hurting I just had surgery and I am seeing trace's going back & forth and my vision is blurry I would like to see someone immediately". The nurse clearly identified that the loss of vision represented a medical emergency and initiated a prompt medical evaluation with Dr. Dure. This failure to examine the inmate delayed an accurate diagnosis of the cause of loss of vision and resulted in further delay in initiating referral to the appropriate ophthalmologist for treatment. This more likely than not diminished the chances of sight restoration in the inmate's left & right eye.

30. DR. HASTY was called on May 24, 2018 when ALCOTT was seen in the Sick Call visit. ALCOTT could not see out of his left eye at this time & was seeing floaters out of his right eye. DR. HASTY prescribed drops for ALCOTT & did not seek prompt ophthalmic evaluation even though he knew that there was a high risk of retinal detachment with ALCOTT.

31. DR. HASTY, without the benefit of examination, and knowing the high risk of retinal detachment in this patient, prescribed drops instead of prompt ophthalmic evaluation. More likely than not, prompt examination would have revealed the nature of the condition.

32. Instead, ALCOTT was next seen for a pre-scheduled post-operative clinical follow up on May 29, 2018 (five days later, with Dr. Roberts, OD). This failure to examine the inmate immediately delayed an accurate diagnosis of the cause of ALCOTT's loss of vision and resulted in further delay in initiating referral to the appropriate ophthalmologist for treatment. This more likely than not diminished the chances of sight restoration for ALCOTT in each eye.

6

33. The treatment that followed after ALCOTT was immediately transferred on May 29, 2018 to Dr. Rappaport at the First Coast Retina Center was tertiary in nature. The damage to ALCOTT's eyes from a) the 26-month gap between a follow-up appointment; b) the 11 & 12-month gap until surgery after Dr. Parks stated "recommend cataract surgery as soon as possible" on May 17, 2017; & c) the unnecessary delay in having a specialist examine ALCOTT after developing severe surgical complications on May 18, 2018 each individually & collectively contributed to the blindness that ALCOTT suffered after each separate eye surgery.

34. Dr. Rappaport had three separate visits with ALCOTT, but he was unsuccessful in trying to raise the pressure in ALCOTT's left eye so that surgical intervention could be attempted. Dr. Rappaport's records noted retinal detachments in each eye; a choroidal detachment with low pressure; & debris (scar tissue) from surgery.

35. Dr. Rappaport requested a second opinion from UF-Shands. ALCOTT had a few post-operative surgeries at UF-Shands that were unable to reverse the damage caused by both the April 16, 2018 left eye cataract surgery & the May 16, 2018 right eye cataract surgery. On November 1, 2018, U-F Shands notified ALCOTT that his prognosis was dismal & his blindness was a likely permanent condition.

### COUNT I – PROFESSIONAL NEGLIGENCE BY CORIZON LEADING TO LOSS OF SIGHT IN ALCOTT'S LEFT EYE

36. Plaintiff incorporates by reference Paragraphs 1-35.

37. The complete lack of care by CORIZON staff led to an advanced progression of ALCOTT's left eye cataract which made subsequent left cataract surgery much more difficult & complications much more likely to occur.

38. CORIZON was/is well aware that there is no cure for cataracts except surgery & that cataracts develop faster in younger patients with certain pre-existing conditions. In spite of these facts, CORIZON was negligent for cancelling necessary medical treatment merely for the sake of its own profitability.

39. Shortly, after ALCOTT's left eye cataract surgery on April 18, 2016, there were complications leading to the complete loss of vision in the left eye.

40. The complete lack of advocacy by the nursing staff on behalf of the Patient led to the severe deterioration of his left eye cataract. Early intervention by CORIZON with respect to the Patient's vision needs would have preserved ALCOTT's eyesight in his left eye.

41. CORIZON's actions in cancelling appointments in order to monitor ALCOTT's cataract development in his left eye were willful and wanton and showed deliberate indifference to ALCOTT's serious medical needs in violation of ALCOTT's Eighth Amendment rights.

42. As a direct & proximate result of CORIZON's negligence & deliberate indifference, ALCOTT lost the sight in his left eye, endured unnecessary pain & suffering & his quality of life has been adversely affected forever.

WHEREFORE, the Plaintiff demands judgment against CORIZON for compensatory damages, attorneys fees, costs & all other just & proper relief.

### COUNT II – PROFESSIONAL NEGLIGENCE BY CORIZON LEADING TO LOSS OF SIGHT IN ALCOTT'S RIGHT EYE

43. Plaintiff incorporates by reference Paragraphs 1-35.

44. The complete lack of care by CORIZON staff led to an advanced progression of ALCOTT's right eye cataract which made subsequent right eye cataract surgery much more difficult & complications much more likely to occur.

8

45. CORIZON was/is well aware that there is no cure for cataracts except surgery & that cataracts develop faster in younger patients with certain pre-existing conditions. In spite of these facts, CORIZON was negligent for cancelling necessary medical treatment merely for the sake of its own profitability.

46. Almost immediately after ALCOTT's right eye cataract surgery on May 16, 2016, there were complications leading to the loss of vision in the right eye where today he can barely see shadows out of his right eye.

47. The complete lack of advocacy by the nursing staff on behalf of the Patient led to the severe deterioration of his right eye cataract. Early intervention by CORIZON with respect to the Patient's vision needs would have preserved ALCOTT's eyesight in his right eye.

48. CORIZON's actions in cancelling appointments in order to monitor ALCOTT's cataract development in his right eye were willful and wanton and showed deliberate indifference to ALCOTT's serious medical needs in violation of his Eighth Amendment rights.

49. As a direct & proximate result of CORIZON's negligence & deliberate indifference, ALCOTT lost the sight in his right eye, endured unnecessary pain & suffering & his quality of life has been adversely affected forever.

   WHEREFORE, the Plaintiff demands judgment against CORIZON for compensatory damages, attorneys fees, costs & all other just & proper relief.

**COUNT III – PROFESSIONAL NEGLIGENCE BY CENTURION LEADING TO LOSS OF SIGHT IN ALCOTT'S LEFT EYE**

50. Plaintiff incorporates by reference Paragraphs 1-35.

51. The complete lack of care by CENTURION staff led to an advanced progression of ALCOTT's left eye cataract & made the subsequent left eye cataract surgery much more difficult.

52. CENTURION was/is well aware that there is no cure for cataracts except surgery & that cataracts develop faster in younger patients with certain pre-existing conditions. In spite of these facts, CENTURION was negligent for waiting over 26-months before ALCOTT's follow up cataract appointment on May 17, 2017.

53. Shortly, after ALCOTT's left eye cataract surgery on April 18, 2018, there were complications leading to the complete loss of vision in ALCOTT's left eye.

54. The complete lack of advocacy by the nursing staff on behalf of the Patient led to the severe deterioration of his left eye cataract. Early intervention by CENTURION with respect to the Patient's vision needs would have preserved ALCOTT's eyesight in his left eye.

55. CENTURION was further negligent by losing ALCOTT's "Blue Form" which was his surgery clearance form. ALCOTT was unable to have necessary surgery because of the CENTURION staff's negligence in losing this form.

56. CENTURION was further negligent & showed deliberate indifference when it delayed ALCOTT'S left eye surgery by eleven months even after Dr. Park's recommendation for "cataract surgery as soon as possible".

57. Once complications developed on May 18 when ALCOTT was unable to see out of his left eye, CENTURION was then further negligent for not immediately seeking emergency medical treatment. Timely intervention is critical once complications develop after surgery. Instead, CENTURION waited eleven days for a Specialist examination. On May 29, 2018, immediately after being seen by Dr. Roberts, OD, ALCOTT was transferred to Dr. Rappaport at First Coast Retina Center. ALCOTT should have been transferred to a specialist immediately upon receipt of his sick call request on May 18, 2018. ALCOTT was known to

10

be a high-risk candidate for complications because of the previous lack of treatment combined with possible medical contributing factors (HIV) that CENTURION was well aware of.

58. The complete lack of advocacy by the nursing staff on behalf of the Patient led to the severe deterioration of his left eye cataract. Early intervention by CENTURION with respect to the Patient's vision needs would have preserved ALCOTT's eyesight in his left eye.

59. CENTURION's actions a) in not treating ALCOTT's cataract development in his left eye for 26-months; b) its loss of the surgical clearance Blue Form; c) in delaying ALCOTT's left eye cataract surgery for eleven months after Dr. Parks recommendation for "cataract surgery as soon as possible; & (d) its failure to immediately treat after surgical complications arose were willful and wanton and showed deliberate indifference to ALCOTT's serious medical needs in violation of his Eighth Amendment rights.

60. As a direct & proximate result of CENTURION's negligence & deliberate indifference, ALCOTT lost the sight in his left eye, endured unnecessary pain & suffering & his quality of life has been adversely affected forever.

   WHEREFORE, the Plaintiff demands judgment against CENTURION for compensatory damages, attorneys fees, costs & all other just & proper relief.

**COUNT IV – PROFESSIONAL NEGLIGENCE BY CENTURION LEADING TO LOSS OF SIGHT IN ALCOTT'S RIGHT EYE**

61. Plaintiff incorporates by reference Paragraphs 1-35.

62. The complete lack of care by CENTURION staff led to an advanced progression of ALCOTT's right eye cataract & made the subsequent right eye cataract surgery much more difficult.

63. CENTURION was/is well aware that there is no cure for cataracts except surgery & that cataracts develop faster in younger patients with certain pre-existing conditions. In spite of

11

these facts, CENTURION was negligent for waiting over 26-months before ALCOTT's follow up cataract appointment on May 17, 2017.

64. Shortly, after ALCOTT's right eye cataract surgery on May 16, 2018, there were complications leading to the complete loss of vision in the right eye.

65. The complete lack of advocacy by the nursing staff on behalf of the Patient led to the severe deterioration of his right eye cataract. Early intervention by CENTURION with respect to the Patient's vision needs would have preserved ALCOTT's eyesight in his right eye.

66. CENTURION was further negligent by losing ALCOTT's "Blue Form" which was his surgery clearance form. ALCOTT was unable to have necessary surgery because of the CENTURION staff's negligence in losing this form.

67. CENTURION was further negligent & showed deliberate indifference when it delayed ALCOTT'S right eye surgery by twelve months even after Dr. Park's recommendation for "cataract surgery as soon as possible".

68. Once complications developed on May 18, 2018 when ALCOTT was seeing floaters out of his right eye, CENTURION was then further negligent for not immediately seeking emergency medical treatment. Timely intervention is critical once complications develop after surgery. Instead, CENTURION waited eleven days for a pre-scheduled Specialist examination. On May 29, 2018, immediately after being seen by Dr. Roberts, OD, ALCOTT was transferred to Dr. Rappaport at First Coast Retina Center. ALCOTT should have been transferred to a specialist immediately upon receipt of his sick call request on May 18, 2018. ALCOTT was known to be a high-risk candidate for complications because of the lack of treatment combined with possible medical contributing factors (HIV) that CENTURION was well aware of.

12

69. The complete lack of advocacy by the nursing staff on behalf of the Patient led to the severe deterioration of his right eye cataract.  Early intervention by CENTURION with respect to the Patient's vision needs would have preserved ALCOTT's eyesight in his right eye.

70. CENTURION's actions a) in not treating ALCOTT's cataract development in his right eye for 26-months, b) its loss of the surgical clearance Blue Form, c) in delaying ALCOTT's right eye cataract surgery for twelve months after Dr. Parks recommendation for "cataract surgery as soon as possible & (d) its failure to immediately treat after surgical complications arose were willful and wanton and showed deliberate indifference to ALCOTT's serious medical needs in violation of his Eighth Amendment rights.

71. As a direct & proximate result of CENTURION's negligence & deliberate indifference, ALCOTT lost the sight in his right eye, endured unnecessary pain & suffering & his quality of life has been adversely affected forever.

   WHEREFORE, the Plaintiff demands judgment against CENTURION for compensatory damages, attorneys fees, costs & all other just & proper relief.

### COUNT V – PROFESSIONAL NEGLIGENCE BY HASTY LEADING TO LOSS OF SIGHT IN ALCOTT'S LEFT EYE

72. Plaintiff incorporates by reference Paragraphs 1-35.

73. Left eye cataract surgery was performed by DR. HASTY on April 18, 2018.

74. Consultation with DR. HASTY was made on May 24, 2018 after complications (unable to see out of left eye) arose on or about May 18, 2018.  DR. HASTY, without the benefit of examination, and knowing the high risk of retinal detachment in this patient, prescribed drops instead of prompt ophthalmic evaluation.  More likely than not, prompt examination would have revealed the nature of the condition & ALCOTT's left eye vision could have been preserved.

75. DR. HASTY felt it was appropriate to wait five days for a pre-scheduled clinic follow up on May 29, 2018 with Dr. Roberts, OD. This fatal failure to examine the inmate immediately delayed an accurate diagnosis of the cause for the loss of vision in ALCOTT's left eye and resulted in further delay in initiating referral to the appropriate ophthalmologist for treatment. This more likely than not diminished the chances of sight restoration in the inmate's left eye.

76. Subsequent examination of ALCOTT's left eye noted a giant retinal tear in the left eye & scar tissue from the surgery. The choroidal detachment in the left eye with low pressure was likely due to a leaking surgical incision.

77. DR. HASTY was negligent in performing cataract surgery on ALCOTT's left eye as evidenced by the a) giant retinal tear, b) the likely leaking surgical incision & c) the scar tissue seen in the eye after surgery.

78. Dr. HASTY's failure to immediately act after being consulted on May 24, 2018 when major complications developed with ALCOTT's left eye was negligent & showed willful and wanton and deliberate indifference to ALCOTT's serious medical needs in violation of ALCOTT's Eighth Amendment rights.

79. As a direct & proximate result of DR. HASTY's negligence & deliberate indifference, ALCOTT lost the sight in his left eye, endured unnecessary pain & suffering & his quality of life has been adversely affected forever.

   WHEREFORE, the Plaintiff demands judgment against HASTY for compensatory damages, attorneys fees, costs & all other just & proper relief.

### COUNT VI – PROFESSIONAL NEGLIGENCE BY HASTY LEADING TO LOSS OF SIGHT IN ALCOTT'S RIGHT EYE

80. Plaintiff incorporates by reference Paragraphs 1-35.

81. Right eye cataract surgery was performed by DR. HASTY on May 16, 2018.

14

82. Consultation with DR. HASTY was made on May 24, 2018 after complications (floaters in the right eye) arose on or about May 18, 2018. DR. HASTY, without the benefit of examination, and knowing the high risk of retinal detachment in this patient, prescribed drops instead of prompt ophthalmic evaluation. More likely than not, prompt examination would have revealed the nature of the condition & ALCOTT's right eye vision could have been preserved.

83. DR. HASTY felt it was appropriate to wait five days for a pre-scheduled clinic follow up on May 29, 2018 with Dr. Roberts, OD. This fatal failure to examine the inmate delayed an accurate diagnosis of the cause for the floaters in ALCOTT's right eye and resulted in further delay in initiating referral to the appropriate ophthalmologist for treatment. This more likely than not diminished the chances of sight restoration in the inmate's right eye.

84. Subsequent examination of ALCOTT's right eye noted a giant retinal tear in the right eye & scar tissue from the surgery.

85. DR. HASTY was negligent in performing cataract surgery on ALCOTT's right eye as evidenced by the a) giant retinal tear & b) the scar tissue seen in the eye after surgery.

86. Dr. HASTY's failure to immediately act after being consulted on May 24, 2018 when major complications developed with ALCOTT's right eye was negligent & showed willful and wanton and deliberate indifference to ALCOTT's serious medical needs in violation of ALCOTT's Eighth Amendment rights.

87. As a direct & proximate result of DR. HASTY's negligence & deliberate indifference, ALCOTT lost the sight in his right eye, endured unnecessary pain & suffering & his quality of life has been adversely affected forever.

   WHEREFORE, the Plaintiff demands judgment against HASTY for compensatory damages, attorneys fees, costs & all other just & proper relief.

PLAINTIFF demands a jury trial on all charges so triable.

DATED this 25th day of January, 2021.

Respectfully Submitted,
GREGORY NORDT, Esq.

/s/ Gregory M. Nordt
_____
Gregory M. Nordt
FL Bar Number: 67067
5900 SW 13th Street
Plantation, FL 33317
Phone: 954-325-8475
Fax:     888-381-7879
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served by email this 25th day of January 2021 to Kayla Platt Rady at krady@rumberger.com, Attorney for Centurion of Florida, LLC; Jami Kimbrall at jmk@brookslawyer.net, Attorney for Corizon Health Inc. & Corizon, LLC; and Miriam Coles at mcoles@henryblaw.com, Attorney for Dr. Benjamin R. Hasty & Advanced Eyecare of Bay County P.A.

16