UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROGER DAVID ALCOTT,

    Plaintiff,

v.                                                   Case No. 3:21-cv-308-TJC-MCR

CENTURION OF FLORIDA, LLC,
et al.,

    Defendants.

## ORDER

This civil rights and medical negligence action is before the Court on its third round of Rule 12 motions. Plaintiff Roger David Alcott initiated this action by filing a Complaint in the Circuit Court of the Eighth Judicial Circuit in and for Union County, Florida (Doc. 3), which Defendants removed. (Doc. 1). Alcott is proceeding on a Second Amended Complaint (SAC) against Centurion of Florida, LLC; Corizon, LLC; Corizon Health, Inc.; Dr. Benjamin R. Hasty; and Advanced Eye Care of Bay County, P.A. (Doc. 85).

Before the Court are two motions to dismiss and a motion to strike.[1]

---

[1] Corizon, LLC and Corizon Health, Inc. (Corizon) also filed a motion to dismiss (Doc. 92), to which Alcott responded (Doc. 97), and Corizon replied. (Doc. 102). However, in response to Corizon's Suggestion of Bankruptcy (Doc. 108), the Court stayed the case as to Corizon and terminated Corizon's Motion to Dismiss. (Doc. 110).

Hasty and Advanced Eye Care jointly move to dismiss one count of the SAC. (Doc. 89). They answered the remaining counts against them. (Doc. 88). Centurion moves to dismiss all counts against it. (Doc. 86). Alcott responded in opposition to both motions to dismiss (Docs. 94, 95), and Centurion replied. (Doc. 104). Additionally, Alcott moves to strike several of Hasty and Advanced Eye Care's affirmative defenses. (Doc. 96). Hasty and Advanced Eye Care jointly responded in opposition to Alcott's motion to strike. (Doc. 99). These motions are ripe for the Court's review.

## I.     ALCOTT'S ALLEGATIONS[2]

Alcott was an inmate in the custody of the Florida Department of Corrections (FDOC) from April 1, 2014, to November 27, 2019. (Doc. 85 ¶ 6). Beginning on May 1, 2016, Centurion contracted with FDOC to provide medical services to inmates. Id. ¶ 11. Hasty was a licensed ophthalmologist, doing business as Advanced Eye Care, who performed surgery and other ophthalmic services as an independent contractor for Centurion. Id. ¶¶ 13, 15.

On March 31, 2015, an optician diagnosed Alcott with cataracts in both eyes. Id. ¶ 16. Alcott did not have a follow-up examination until May 16, 2017, when Dr. Kelli Parks examined him. Id. ¶ 19. Dr. Parks noted that Alcott "had

---

[2] These facts, assumed as true, are taken from the SAC.

severe cataracts that had gotten progressively worse since 2015 and that they were causing increasing IOP (intra-ocular pressure)." Id. Dr. Parks recommended cataract surgery "as soon as possible." Id.

On May 23, 2017, Alcott was transferred to another prison facility. Id. ¶ 21. His transfer notes stated that he had severe cataracts and included a "Blue Form" which "represented the approval for [Alcott's] cataract surgery by the [FDOC]." Id. On July 1, 2017, Alcott went to "Sick Call" where he inquired about his upcoming surgery and the "Blue Form." Id. ¶ 22. On July 9, 2017, Alcott made a "Sick Call Request" where he again inquired about the "Blue Form" and stated "that his condition was getting progressively worse." Id. ¶ 23. However, Alcott did not see a medical provider until January 12, 2018, when he had an ophthalmology consultation with Hasty. Id. Hasty recommended "complex cataract surgery" on both eyes and "noted the high risk of retinal detachment after surgery." Id. ¶ 26. On April 18, 2018, and on May 16, 2018, Hasty performed cataract surgeries on Alcott's left and right eyes, respectively, at the Reception and Medical Center. Id. ¶ 2.

Alcott alleges that on May 18, 2018, he noted "blacklines and decreased left eye vision" and on May 19, 2018, "he could not see out of the left eye at all."

Id. ¶ 29.³ On May 21, 2018, Alcott filled out a "Sick Call Request" stating "my eyes are hurting[.] I just had surgery[.] I am seeing trace's [sic] going back and forth [and] my vision is blurry[.] I would like to see someone immediately." Id. ¶ 30. Alcott alleges that "[t]he nurse clearly identified that the loss of vision represented a medical emergency and initiated a prompt medical evaluation with [a doctor]. However, Alcott was not seen by any medical personnel until May 24, 2018." Id.

Alcott alleges that "Dr. Hasty was called on May 24, 2018[,] when Alcott could not see out of his left eye. . . and was seeing floaters out of his right eye." Id. ¶ 31. Alcott alleges that "Dr. Hasty, without the benefit of examination, knowing the substantial risk of retinal detachment in this patient, prescribed drops instead of performing a prompt ophthalmic evaluation." Id. ¶ 32. Alcott alleges that instead of examining Alcott that day, "Dr. Hasty felt it was appropriate to wait five days for a pre-scheduled clinic follow up on May 29, 2018[,] with Dr. Roberts, OD." Id. ¶ 146.

When Alcott saw Dr. Roberts on May 29, 2018, Dr. Roberts "immediately had [Alcott] transferred to Dr. Rappaport at First Coast Retina Center." Id. ¶ 33. Alcott had three visits with Dr. Rappaport, who ultimately sent him to

---

³ It is unclear if Alcott immediately reported these complications or if he waited until May 24th to report them because he alleges that these complaints are documented in nursing records from May 24, 2018. (Doc. 85 ¶ 29).

UF Health Shands. Id. ¶¶ 36, 37. Alcott had multiple unsuccessful surgeries, and on November 1, 2018, "[UF] Shands notified Alcott that his prognosis was dismal, and his blindness was a likely permanent condition." Id. ¶ 37.

Alcott alleges that the "complete lack of care by [Centurion] led to an advanced progression of Alcott's cataracts disease which made the subsequent cataract surgery in each eye that much more difficult. There is further negligence by [Centurion] due to losing his 'Blue Form' which was his surgery clearance form." Id. ¶ 25. Additionally, following his cataract surgeries, Alcott alleges that the "failure to examine [him] delayed an accurate diagnosis of the cause of the loss of vision and resulted in further delay in initiating a referral to the appropriate ophthalmologist for treatment. This more likely than not diminished the chances of sight restoration in both of Alcott's eyes." Id. ¶ 30.

In the SAC, Alcott raises thirteen counts for relief. (Doc. 85). The only Counts before the Court for review are: (Count VII) Medical Negligence by Centurion of Florida, LLC, Leading to Loss of Sight in Alcott's Left Eye; (Count VIII) Medical Negligence by Centurion of Florida, LLC, Leading to Loss of Sight in Alcott's Right Eye; (Count IX) Deliberate Indifference – Centurion of Florida, LLC; and (Count XIII) Deliberate Indifference – Dr. Hasty. Centurion moves to dismiss all three counts against it. (Doc. 86). Together, Hasty and Advanced Eye Care answered all counts against them except Count XIII, which they move to dismiss. (Docs. 88, 89). Alcott moves to strike nine affirmative defenses

5

asserted by Hasty and Advanced Eye Care in their Answer. (Doc. 96).

## II.   MOTIONS TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of allegations in the complaint. Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Instead, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Additionally, the court must accept all factual allegations as true and construe all reasonable inferences in favor of the plaintiff. Iqbal, 556 U.S. at 679 (citation omitted). The court need not, however, accept legal conclusions as true. Id. at 678. Factual allegations must "raise a right to relief above the speculative level," which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Twombly, 550 U.S. at 555 (citation

6

omitted); Iqbal, 556 U.S. at 678 (citations omitted). A district court may dismiss a complaint for failure to comply with Rule 8(a)(2) if the plaintiff can prove no facts that would entitle him to relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

### A. Hasty

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. See Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015). Alcott's claims of deliberate indifference to a serious medical need arise under the Eighth Amendment because the alleged deprivation of his rights occurred during his incarceration. See Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by alleging that he had a serious medical need. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007). Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to allege "that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk,

7

and (3) acted with more than gross negligence." Wade v. McDade, 67 F.4th 1363, 1374 (11th Cir. 2023). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

"For better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, 'or even very good.'" Keohane v. Fla. Dep't. of Corr. Sec'y, 952 F.3d 1257, 1277 (11th Cir. 2020) (quoting Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991)). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011)[4] (quoting Harris, 941 F.2d at 1505); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment. Failure to respond to a known medical problem can also constitute deliberate indifference." (citations omitted)). Thus, "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." Keohane, 952 F.3d at 1266.

---

[4] The Court does not rely on unpublished opinions as binding precedent, however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022).

8

"When a prisoner has received medical attention, courts are reluctant to second-guess medical judgments even if there is a dispute over the adequacy of the treatment." Brennan v. Headley, 807 F. App'x 927, 935 (11th Cir. 2020) (citing Harris, 941 F.2d at 1507). Indeed, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107)). As such, "mere medical malpractice or a difference in medical opinion as to treatment or diagnosis does not constitute deliberate indifference." Brennan, 807 F. App'x at 935 (citing Waldrop, 871 F.2d at 1033).

Alcott alleges a difference in medical opinion that does not rise to the level of deliberate indifference. Someone, (the SAC does not specify who), allegedly contacted Hasty on May 24, 2018, to inform him that Alcott "could not see out of his left eye. . . and was seeing floaters out of his right eye." (Doc. 85 ¶ 31). Alcott alleges that instead of promptly examining Alcott himself, Hasty chose to prescribe eye drops and had Alcott wait five more days for his pre-scheduled clinic follow up on May 29, 2018. Id. ¶¶ 145, 146. Alcott's allegations demonstrate that Hasty exercised his medical judgment, not that Hasty's care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Nimmons, 409 F. App'x at 297

9

(quoting Harris, 941 F.2d at 1505). While Alcott's allegations might support a medical negligence claim, he fails to allege a plausible deliberate indifference claim. Accordingly, the Court grants Hasty/ Advanced Eye Care's Motion to Dismiss Count XIII.

### B. Centurion

Centurion argues that the Court should dismiss Alcott's deliberate indifference claim because Alcott "failed to identify a policy, custom, or practice of Centurion that caused his injury," and he "failed to allege an underlying constitutional violation." (Doc. 86 at 6-13). Additionally, Centurion argues three grounds to support its request to dismiss Alcott's medical negligence claims: (1) "Mr. Alcott's medical negligence claims are partially barred by the statute of limitations"; (2) "Mr. Alcott fails to state a claim for medical negligence"; and (3) "Centurion is entitled to sovereign immunity." (Doc. 86 at 13-22). Upon review of the parties' filings and consideration of the applicable law, the Court denies Centurion's motion to dismiss in its entirety.

### III.  MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(F). Under Rule 12(f), an affirmative defense may be stricken if it is legally insufficient, however, striking

a defense is a "'drastic remedy[,]' which is disfavored by the courts." Adams v. JP Morgan Chase Bank, N.A., No. 3:11-cv-337-J-37MCR, 2011 WL 2938467, at *1 (M.D. Fla. July 21, 2011) (quoting Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002)). "A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla. 2002) (citing Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). Moreover, "[a]n affirmative defense will be held insufficient as a matter of law only if it appears that the Defendant cannot succeed under any set of facts which it could prove." Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp., No. 97-2866-CIV-T-17B, 1999 WL 781812, at *1 (M.D. Fla. Sept. 16, 1999). Further, "a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Id. Finally, "[w]hen a party incorrectly labels a negative averment as an affirmative defense rather than as a specific denial, the proper remedy is not to strike the claim but rather to treat it as a specific denial." Muschong v. Millennium Physician Grp., LLC, No. 2:13-cv-705-FTM-38CM, 2014 WL 3341142, at *2 (M.D. Fla. July 8, 2014).

Alcott moves to strike Hasty and Advanced Eye Care's first, second, third,

11

fourth, fifth, seventh, eighth, eleventh, and twelfth affirmative defenses. (Doc. 96). Alcott's Motion to Strike is denied as to Hasty and Advanced Eye Care's first, third, fourth, fifth, eleventh, and twelfth affirmative defenses. Likewise, Alcott's Motion to Strike is denied as to Hasty and Advanced Eye Care's second and seventh affirmative defenses, but the Court will treat the second and seventh affirmative defenses as denials.

Hasty and Advanced Eye Care's eighth affirmative defense states "Plaintiff is barred from proceeding in forma pauperis and must refile this action because he is a three-strike litigant under the Prison Litigation Reform Act." (Doc. 88 at 11). A plaintiff may not proceed in forma pauperis if:

> the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). However, § 1915(g) "only applies to cases commenced in federal court by a prisoner who sought and was granted in forma pauperis status in that court." Maldonado v. Baker Cnty. Sheriff's Off., 23 F.4th 1299, 1305, 1307 (11th Cir. 2022). Thus, § 1915(g) does not apply here because Alcott brought this action in state court and never sought in forma pauperis status in federal court after the Defendants removed the case. See id. at 1307. Accordingly, regardless of whether Alcott is a three-strikes litigant under the

12

Prison Litigation Reform Act, Hasty and Advanced Eye Care's eighth affirmative defense is insufficient as a matter of law and due to be stricken.

### IV.  CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1. Defendants Hasty and Advanced Eye Care's Motion to Dismiss Count XIII of Plaintiff's Second Amended Complaint (Doc. 89) is **GRANTED**. Alcott's Eighth Amendment claim against Hasty is **DISMISSED with prejudice**.

2. Defendant Centurion of Florida, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 86) is **DENIED**. Centurion shall file an answer to the Second Amended Complaint by **August 23, 2023**.

3. Plaintiff Alcott's Motion to Strike Defendants Hasty and Advanced Eye Care's Affirmative Defenses to Plaintiff's Second Amended Complaint (Doc. 96) is **GRANTED IN PART AND DENIED IN PART** as set forth above. Hasty and Advanced Eye Care's eighth affirmative defense (Doc. 88 at 11) is **STRICKEN**.

4. By separate Order, the Court will set a telephonic hearing on Attorneys Gabriel D. Mazzitelli, Alexa Delgado, and Manuel L. Dobrinksy's motions to withdraw as counsel for Alcott (Docs. 111, 113) and Alcott's motions to

extend the case management and scheduling order deadlines. (Docs. 112, 114).

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of August, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

hkf
Copies:
Counsel of record